IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| STEVEN M. HANK, | ) | Case No. 1:16-cv-02104 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | THOMAS M. PARKER |
| GREAT LAKES CONSTRUCTION | ) | |
| *CO., et al.,* | ) | |
| Defendants. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |

I.     **Introduction and Procedural Background**

Plaintiff Steven M. Hank sued his former employer, Great Lakes Construction Co.

("Great Lakes") and his union, the International Union of Operating Engineers, Local 18 ("Local

18" or "Union") after his employment ended on January 22, 2016.  On that date, Hank signed a

document in which he agreed to be placed on lay-off status, rather than being terminated, in

exchange for Great Lakes' agreement not to contest Hank's application for unemployment

compensation benefits.  Hank instituted this action in Cuyahoga County Common Pleas Court,

alleging causes of action for disability discrimination (Count I), age discrimination (Count II),

workers compensation retaliation (Count III), and company breach of a collective bargaining

agreement/union breach of a duty of fair representation (Count IV).  ECF Doc. 1-1.  Counts I -

III alleged violations of Ohio statutory law.  Count IV did not specifically identify a statute under

which it was asserted, but Great Lakes and Local 18 removed the case to this court based on their

contention that any cause of action asserted in Count IV arose, if at all, under § 301 of the Labor

Management Relations Act, 29 U.S.C. § 185.  Defendants asserted that the court has federal question jurisdiction over Count IV under 28 U.S.C. § 1331, and they contend the court may exercise supplemental jurisdiction over Counts I-III.  ECF Doc. 1, Page ID# 2, 3.

Plaintiff alleges that his disability, age discrimination, worker's compensation retaliation, and breach of collective bargaining agreement claims arise from two series of events.  The first set of events involved repeated injuries to Hank's left knee which he suffered while working in Great Lakes' paint shop and his attempts to obtain permission to and compensation for treating those injuries.  The second set of events involved Great Lakes' allegation that Hank falsified time records and it's confrontation of Hank in the presence of a representative from Local 18. That meeting culminated in the parties signing of a document entitled "Acknowledgement and Agreement" ("the Release") and Hank being laid-off with no right of recall and no right to seek reemployment with Great Lakes.  One provision of the Release required that Hank not file a grievance under the collective bargaining agreement and not file any sort of claim against Great Lakes or the Union.

Great Lakes has filed its limited motion for summary judgment (EFC Doc. 107) contending that Hank's execution of the Release on January 22, 2016 bars all of his claims against Great Lakes.  Because I agree the release bars those claims, I recommend that Great Lakes' limited motion for summary judgment be **GRANTED**.

## II.     Factual History

### A.      Hank's Workplace Injuries and Ohio Bureau
         of Workers' Compensation Claims

The following facts are undisputed and/or established by the Rule 56 evidence.  Hank is 49-years-old, holds a General Equivalency Diploma ("G.E.D."), and has post-high-school-level proficiencies in reading comprehension and word recognition, high school level proficiency in

spelling, and a sixth-grade-level proficiency in arithmetic.  ECF Doc. 104-1, Page ID# 1926.

Hank worked as a sandblaster in Great Lakes' paint shop from about October 29, 2007 until

January 22, 2016.  ECF Doc. 113, Page ID# 2092, 2094.  Hank was a member of Local 18.  Id. at

2092.  As a Union member, the collective bargaining agreements between Great Lakes and the

Union, the "Heavy Highway Contract" ("CBA") governed certain terms and conditions of

Hank's employment.  ECF Doc. 107-1, Page ID# 1955.  Hank received copies of the CBA from

time to time but claims not to have received the most recent version of the agreement.  ECF Doc.

107-2, Page ID# 1978-80.

On March 27, 2012 Hank tore the meniscus in his left knee after falling while

sandblasting a trailer.  ECF Doc. 113, Page ID# 2092.  Hank reported the injury to his

supervisor, John Tinghe, and other individuals.  Id.  Hank underwent surgery to repair his torn

meniscus around May 28, 2012.  Id.  He filed a claim regarding his left knee injury with the Ohio

Bureau of Workers' Compensation ("BWC") around June 15, 2012, which the BWC allowed.

Id.

Although Hank claims it generally requires approximately six weeks to recover from the

sort of surgery he had, Hank's doctor released him to return to work after a week and a half

because Great Lakes allegedly only allowed him thirteen days of unpaid leave.  Id.  Upon his

return to work, Hank began performing his former job duties in the paint shop.  Id.  Hank claims

he began to experience continuous pain in his left knee and suffered another injury to that knee

on or about May 7, 2013.  Id. at 2093.  Hank reported the new injury to his supervisors and

received an injection to alleviate his symptoms.  Id.  Hank allegedly suffered yet another left

knee injury on June 10, 2015 and received another injection.  Id.  Hank alleges the BWC denied

his doctor's prescribed treatment of gel injections; and, in August, 2016, Hank took an unpaid week of leave because of the severe pain in his left knee.  Id.

On August 27, 2015 Hank allegedly filed a C86 motion with the BWC, in which he requested payment for gel injections and occupational therapy to treat his left knee injuries.  Id.  Great Lakes allegedly denied Hank's request; and, in October, 2015, Hank retained counsel.  Id.  Thereafter, CareWorks, a third party administrator, notified Great Lakes of the additional claims Hank had filed.  Id.  Hank alleges he advised his superiors at Great Lakes that he intended to file additional BWC claims regarding his May 7, 2013 and June 10, 2015 knee injuries.  Id.  On January 21, 2016 the day before his employment ended, Hank allegedly testified at a BWC hearing regarding his claimed additional workplace injuries and the treatments he sought.  Id.

**B.      Great Lakes Alleged Hank Falsified His Time Sheets**

While performing an audit of Great Lakes time card process in November, 2015, a Great Lakes employee allegedly identified and informed Great Lakes' president of a problem with Hank's time reporting.  ECF Doc. 113-2, Page ID# 2141.  Surveillance video footage allegedly showed that on certain Saturdays Hank arrived after his supervisor, but his time cards showed that Hank and his supervisor worked the same number of hours.  Id. at 2142-43.

On January 22, 2016, several Great Lakes company representatives and Hank's Local 18 representative, Jacob Siesel, met to discuss the allegations that Hank had falsified hours on his time cards.  ECF Doc. 107-1, Page ID# 1955.  Great Lakes' equipment manager (who was responsible for signing off on paint shop employee time cards and who had the ability to approve extra time for employees) was not present at the meeting.  ECF Doc. 113, Page ID# 2094-95.  The company representatives allegedly compared Hank's time cards with video surveillance footage on certain dates and believed Hank had falsified his time cards and was paid for time he

did not work.  ECF Doc. 107-1, Page ID# 1956.  The company representatives and Mr. Siesel

also allegedly spoke to Hank's supervisor, Mr. Tinghe.  ECF Doc. 113, Page ID# 2095.

 The company representatives and Mr. Siesel then went from a conference room to the

company board room and summoned Hank from the shop floor.  ECF Doc. 113-2, at Page ID#

2157-58.  The company representatives asked Hank about his time cards.  ECF Doc. 113, Page

ID# 2096.  Hank declined to watch the surveillance videos or review the disputed time cards.

ECF Docs. 107-1 and 113, Page ID# 1956, 2096.  Hank allegedly did not dispute any of the

evidence or accusations against him.  ECF Doc. 107-1, Page ID# 1956.  The Great Lakes

representatives then exited the boardroom, leaving Hank alone with his union representative, Mr.

Siesel.  ECF Doc. 113, Page ID# 2096.  Hank allegedly asked Mr. Siesel what he thought about

the situation, but Mr. Siesel had no advice for him.  Hank testified he thought Siesel appeared

uncomfortable, as though he had never been in such a situation before.  Id. at 2096-97.

 After a few minutes, the Great Lakes representatives returned to the board room with two

letters.  Id. at 2096.  The first letter, dated January 22, 2016 and entitled "Termination Notice,"

stated:

> Effective today Steven Hank has been terminated for falsification of The Great
> Lakes Construction Company timecards.  This termination is pursuant to Article
> II Section 10 of the Collective Bargaining Contract.  Specifically on numerous
> occasions, Mr. Hank inflated the number of hours he actually worked.  His
> falsification is a violation of The Great Lakes Construction Company Workplace
> Conduct Guidelines.  His conduct violated rule numbers 15 and 17.

ECF Doc. 113-5, Page ID# 2206.  The second letter, also dated January 22, 2016 and entitled

"Acknowledgement and Agreement" ("the Release"), stated:

> The Great Lakes Company ("Great Lakes") agrees that instead of terminating
> Steven Hank for falsification of time records, it will place him on lay-off status
> with no right to recall.  In return, Hank agrees that he will not file a grievance
> under the Collective Bargaining Agreement and that he will not pursue or file any
> sort of claim against either Great Lakes or his Local 18 of the International Union

of Operating Engineers ("Union").  Mr. Hank agrees that he will not seek reemployment at any time in the future with Great Lakes.  The Union agrees that it will not pursue or file any grievance on Mr. Hank's behalf.

Id. at 2207.

Hank allegedly asked for clarification regarding the effect of being placed on lay-off status, and a Great Lakes representative explained that if Hank signed the Release, "Great Lakes would place him on layoff status and he could seek unemployment benefits."  ECF Doc. 107-1, Page ID# 1957.  Hank allegedly did not ask any further questions and signed the release.  ECF Docs. 107-2 and 113, Page ID# 1983, 2096.  The meeting then ended.  ECF Doc. 107-1, Page ID# 1957.

### III.    Law and Analysis

####     A.    Summary Judgment Standard

The summary judgment standard under Rule 56, Fed. R. Civ. P., is well known. Summary judgment must be granted when "cit[ations] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations…admissions, interrogatory answers, or other materials" show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Mutchler v. Dunlap Mem'l Hosp.,* 485 F.3d 854, 857 (6th Cir. 2007).  The initial burden of showing the absence of any "genuine issue" belongs to the moving party.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party has satisfied its burden, the burden then shifts to the nonmoving party.  The nonmoving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be resolved by a jury" or other fact-finder at trial.  *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

### B.      Principles of Contract Law Applicable to Releases

A release is a type of contract that requires a definite offer and acceptance.  *Noroski v. Fallet*, 2 Ohio St. 3d 77, 442 N.E.2d 1302, 1304 (1982).  A release must be the result of a meeting of the parties' minds to be binding.  Id.; *see also Kostelnik v. Helper*, 96 Ohio St.3d 1, 2002-Ohio-2985, 770 N.E.2d 58, ¶ 16 (2002) ("A meeting of the minds as to the essential terms of the contract is a requirement to enforcing the contract.").  "'Mutual assent' or 'a meeting of the minds' means that both parties have reached agreement on the contract's essential terms." *Artisan Mech., Inc. v. Beiser*, 12th Dist. Butler No. CA2010-02-039, 2010-Ohio-5427, ¶27 (quoting *Fenix Enters., Inc. v. M & M Mortg. Corp., Inc*., 624 F.Supp.2d 834, 841 (S.D. Ohio 2009)).  "Essential elements of a contract include an offer, acceptance, contractual capacity, consideration (the bargained for legal benefit and/or detriment), a manifestation of mutual assent and legality of object and of consideration."  *Kostelnik*, 96 Ohio St.3d 1, 2002-Ohio-2985, 770 N.E.2d 58, at ¶ 16 (quoting *Perlmuter Printing Co. v. Strome, Inc.*, 436 F.Supp. 409, 414 (N.D. Ohio 1976)).

### C.      Validity and Enforceability of the Release

Great Lakes argues that the Release covered "any sort of claim" against Great Lakes and, thus, Hank's claims against Great Lakes in this action are barred as a matter of law.  *See* ECF Doc. 107-1, Page ID# 1958.  Hank counters that no contract was formed because there was no mutual assent, and the terms of the Release are ambiguous.  ECF Doc 113, Page ID# 2098-2101. Hank further argues: (i) that the Release is unconscionable, (ii) Hank did not knowingly and voluntarily waive his rights, (iii) any purported waiver is void as against public policy, and (iv) the release is invalid because Mr. Siesel lacked authority to sign the Release on the Union's behalf.  Id. at 2101-10.

### 1. Consideration

A contract is not binding unless supported by consideration, which may consist of either a detriment to the promisee or a benefit to the promisor.  *Williams v. Ormsby*, 131 Ohio St. 3d 427, 2012-Ohio-60, 966 N.E.2d 255, ¶ 15-16 (2012).

Great Lakes asserts that the mutual promises contemplated in the Release provided sufficient consideration, including Hank's "promise to (among other things) forego any sort of claim against . . . Great Lakes" and "Great Lakes' promise[] to characterize [Hank's] discharge as a lay-off, which would facilitate his claim for unemployed benefits."  ECF Doc. 107-1, Page ID# 1958-59.  Hank does not dispute that sufficient consideration supports the Release.  Indeed courts have found sufficient consideration when, among other things, a party promised not to dispute an application for unemployment benefits as Great Lakes did here.  *See Bruner-Cox v. Dimengo*, 9th Dist. Summit No. 17732, 1997 WL 72095, at *3 (Feb. 12, 1997) ("Sufficient consideration in the form of severance pay, a favorable letter of reference, and a promise not to dispute any application for unemployment benefits supported the June 22, 1993 settlement agreement.").  Given Hank's position on this issue, and applying these principles, there was sufficient consideration to support the Release.

### 2. Mutual Assent

Great Lakes asserts that mutual assent was established through the written Release itself and Plaintiff's own testimony regarding the Release.  ECF Doc. 107-1, Page ID# 1959.

"Mutual assent or 'a meeting of the minds' means that both parties have reached an agreement on the contract's essential terms."  *Nguyen v. Chen*, 12th Dist. Butler No. CA2013-10-191, 2014-Ohio-5188, ¶ 43; *see also Nilavar v. Osborn*, 127 Ohio App. 3d 1, 11, 711 N.E.2d 726, 732 (2nd Dist.1998), modified on reconsideration (May 12, 1998).  "In a contract that is not

for goods, the essential terms are, generally, the parties to the contract and its subject matter."

*Nilavar*, 127 Ohio App. 3d 1, 711 N.E.2d at 734.  Manifestations of mutual assent may be made

wholly or partly by written or spoken words, or by other acts or failures to act.  *Precision*

*Concepts Corp. v. Gen. Emp. & Triad Personnel Servs., Inc*., 10th Dist. Franklin No. 00AP-43,

2000 WL 1015114, at *2 (July 25, 2000).  "Acceptance of an offer may be expressed by word,

sign, writing, or act."  Id.

    *Arlington Video Prods., Inc. v. Fifth Third Bancorp* describes the approach Sixth Circuit

courts take when interpreting the meaning of disputed terms in a contract.  569 F. App'x. 379,

(6th Cir. 2014).  In that case, the court stated:

> Construction of a written contract, including the determination of whether the
> contract's terms are ambiguous is a question of law for the court, and in making
> our inquiry we give effect to the intent of the parties in making the contract.  The
> parties' intent is presumed to lie in the language they used in their agreement.  We
> must read the contract as a whole and give effect to every part of it, if possible.
>
> If the parties dispute the meaning of their contract, the court first considers the
> four corners of the document to decide if an ambiguity exists.  If the contract
> terms are clear and precise, the contract is not ambiguous, and the court is not
> permitted to consider any evidence concerning the parties' intent that is outside
> the contract itself.  If the parties' intent cannot be discerned from the four corners
> of the agreement or if the language is susceptible to two or more reasonable
> interpretations, the meaning of the language is construed against its drafter, and a
> question of fact must be decided by a jury.  Contract language can be interpreted
> by the court on summary judgment if the contract's terms are clear and
> unambiguous or, if the contract language is ambiguous, the extrinsic evidence
> supports only one of the conflicting interpretations, notwithstanding the
> ambiguity.

Id. (internal citations omitted).  The test for determining whether contract terms are ambiguous

is: "[c]ommon words appearing in a written instrument will be given their ordinary meaning

unless manifest absurdity results, or unless some other meaning is clearly evidenced from the

face or overall contents of the instrument."  *Shifrin v. Forest City Enters., Inc*., 64 Ohio St.3d

635, 597 N.E.2d 499, 501 (1992).  "As a matter of law, a contract is unambiguous if it can be

given a definite legal meaning." *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, ¶ 11.

Hank argues that the terms of the Release are ambiguous.  ECF Doc. 113, Page ID# 2100. He first contends that the terms of the Release are not clear and precise, because it is "overly broad."  Id.

Hank's argument is not persuasive.  "[A]bsent fraud or mutual mistake, broadly-worded releases are generally construed to include all prior conduct between the parties, even if the scope of such conduct or its damage is unknown to the releasor."  *McBroom v. Safford*, 10th Dist. Franklin No. 11AP-885, 2012-Ohio-1919, ¶ 12-13 (collecting cases); *see also Task v. Nat'l. City Bank*, 8th Dist. Cuyahoga No. 65617, 1994 WL 43883, at *5 (Feb. 10, 1994) (stating that given the broad language of the release, it was incumbent upon releasor to ascertain, at that time, whether he had any causes of action against defendant and, if so, to expressly manifest his intent to exclude those claims from the scope of the release).

Hank also asserts that the there was no mutual assent and the Release was ambiguous because he "was not entirely sure" what the following terms meant when he signed the Release: "right to recall;" "relinquish his right to file any sort of claim against Great Lakes or Local 18;" and "file a grievance under the Collective Bargaining Agreement."  ECF Doc. 113, Page ID# 2100.

Great Lakes counters that Hank's subjective understanding of the terms in the Release is "wholly irrelevant."  ECF Doc. 116, Page ID# 2218.  Great Lakes notes that "the testimony of the parties themselves as to what they believe the contract means . . . is invariably self-serving and insufficient to create [a] dispute of material fact."  Id. (quoting *Stryker Corp. v. Natl. Union Fire Ins. Co. of Pittsburgh, PA*, 842 F.3d 422, 429 (6th Cir.2016)).  Great Lakes' position is

correct on this issue. "Ohio law does not require contracting parties to share a subjective meeting of the minds to establish a valid contract;" rather it requires "that the terms of the agreement establish an objective meeting of the minds, which is to say that the contract is clear and unambiguous." *216 Jamaica Ave., LLC v. S & R Playhouse Realty Co.*, 540 F.3d 433, 440 (6th Cir. 2008); *see also Nilavar*, 127 Ohio App. 3d 1, 711 N.E.2d at 733 ("under contract law, courts properly consider only objective manifestations of intent").

Here, the Release clearly and unambiguously specified the essential terms, namely the parties involved and the agreement's subject matter. *See Nilavar*, 127 Ohio App. 3d 1, 711 N.E.2d at 734 (the essential terms are, generally, the parties to the contract and its subject matter."). The Release identified the parties: The Great Lakes Construction Company, Steven Hank, and Local 18 of the International Union of Operating Engineers. ECF Doc. 133-5, Page ID# 2207. The Release also stated the covered subject matter in a way that is clear enough to allow the Release to have legal meaning.

The Release differs from the contract interpretation dispute in the case Hank cites, *Westfield Ins. Co. v. Galatis*, in which the identity of parties covered by an insurance contract was at issue. *Westfield Ins. Co.*, 100 Ohio St. 3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, 1262, ¶ 15. The court addressed whether a family member of a corporation's employee, who was operating a vehicle outside the scope of his employment, was an insured person under a policy issued to the corporation. Id. at 1264-65, ¶ 29, 36. Unlike the dispute in *Westfield Inc. Co.*, here it is clear what parties are subject to the Release.

Further, many of the other cases Hank cites do not support his position. *See e.g. Savedoff v. Access Grp., Inc.*, 524 F.3d 754, 766 (6th Cir. 2008) (finding that the student loan contract at issue was silent, not ambiguous, about the collection method and timing at issue); *Shifrin v.*

11

*Forest City Enterprises, Inc.*, 64 Ohio St. 3d 635, 597 N.E.2d 499, 502 (1992) (finding the terms of the releases, when given their ordinary meaning, were unambiguous).

I recommend that the court find that Hank and Great Lakes mutually assented to the clear and unambiguous terms of the Release.

### D.    Unconscionability

Hank argues the Release is unconscionable and unenforceable, because its terms are unfair and oppressive to Hank "in light of [] Hank's complete lack of business acumen and Great Lakes' failure to advise [] Hank to seek counsel."  ECF Doc. 113, Page ID# 2103.

Because Hank is asserting that the Release is unconscionable, he bears the burden of proving that the Release is both procedurally and substantively unconscionable.  ECF Docs. 113 and 118, Page ID# 2101, 2222.  "Unconscionability has generally been recognized to include an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party."  *Lake Ridge Academy v. Carney*, 66 Ohio St.3d 376, 613 N.E.2d 183, 189 (1993).  "A determination of whether a written contract is unconscionable is an issue of law."  *Taylor Bldg. Corp. of Am. v. Benfield*, 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12, ¶ 35 (2008).  To prove that the terms of a contract are unconscionable, a party must show there was both "substantive unconscionability," or unfair and unreasonable contract terms; and "procedural unconscionability," or individualized circumstances surrounding each of the parties to the contract such that no voluntary meeting of the minds was possible."  *See Collins v. Click Camera & Video, Inc*., 86 Ohio App. 3d 826, 621 N.E.2d 1294, 1299 (2nd Dist. 1993).

### 1.   Procedural Unconscionability

When determining whether procedural unconscionability exists, courts may consider factors including the "age, education, intelligence, business acumen and experience, relative bargaining power, who drafted the contract, whether the terms were explained to the weaker party, [and] whether alterations in the printed terms were possible." *Collins*, 86 Ohio App. 3d 826, 621 N.E.2d at 1299.

Hank argues the circumstances surrounding the formation of the agreement, including his education level, his lack of business acumen, his lack of experience in similar transactions, that Great Lakes drafted the Release, and Hank's allegations that Great Lakes never explained the terms of the Release demonstrate procedural unconscionability.  ECF Doc. 113, Page ID# 2102-03.  Great Lakes argues the Release was not procedurally unconscionable because "the Release was presented to [Hank] in brief, clear and unambiguous terms, he had adequate intelligence and education to understand what he was signing, he was accompanied by his Union representative, and he failed to indicate that he did not understand the Agreement or that he needed more time to consider the Release at the time he signed it."  ECF Doc. 116, Page ID# 2223.  Great Lakes asserts that for Hank there was no "absence of meaningful choice," as required to prove procedural unconscionability.  *See Hurst v. Enter. Title Agency, Inc.*, 157 Ohio App. 3d 133, 2004-Ohio-2307, 809 N.E.2d 689, 694, ¶ 20 (11th Dist.) ("Unconscionability is generally recognized to include an absence of meaningful choice on the part of one of the parties to a contract . . . .").

Here, Hank had some bargaining power at the time he signed the Release, because he was a member of the Union, the Union had a collective bargaining agreement with Great Lakes, and Mr. Siesel, a Union representative, was present.  *See* ECF Doc. 113, Page ID# 2096; *see also*

*Lorain Cty. Aud. v. Ohio Unemp. Comp. Rev. Comm.*, 113 Ohio St. 3d 124, 2010-Ohio-1924, 863 N.E.2d 133, ¶ 17 (9th Dist.) ("union-supported employees are in a protected class and are afforded more bargaining power through the union"). However, Great Lakes likely had greater bargaining power because it was a company and Hank's then employer. *See Nasrallah v. Lakefront Lines, Inc.*, No. 1:17 CV 69, 2017 WL 2291657, at *4 (N.D. Ohio May 25, 2017) (discussing how "there are often great inequalities in bargaining power between employers and employees."). It is also undisputed that Great Lakes drafted the release. *See* ECF Docs. 107-1 and 113; Page ID# 1956, 2096. These circumstances weigh in favor of a finding of procedural unconscionability.

Hank argues "no voluntary meeting of the minds was possible," in part because "Hank [wa]s a forty-nine (49) year old male who dropped out of high school in the 12th grade, but obtained a General Equivalency Diploma (GED)" and had no business acumen. ECF Doc. 113, Page ID# 2102. "Although education and experience are factors to consider in determining whether a clause is procedurally unconscionable, [*Cross v. Carnes*, 132 Ohio App.3d 157, 170, 724 N.E.2d 828 (11th Dist. 1998)], an individual is presumed competent to contract." *Hurst*, 157 Ohio App. 3d 133, 2004-Ohio-2307, 809 N.E.2d 689, ¶ 12 n.2. Hank's own evidence reveals he has a post-high school equivalency in reading and word recognition; (ECF Doc. 104-1, at Page ID# 1926) and, as discussed above, the terms of the Release are clear and unambiguous. Courts have declined to find procedural unconscionability when parties who had attained similar education levels and who also lacked business experience entered into contracts. *See e.g. Anderson v. Delta Funding Corp.*, 316 F. Supp. 2d 554, 564 (N.D. Ohio 2004) (the party stated she was "an elderly, unsophisticated consumer"); *Cole v. Temple Israel*, 9th Dist. Summit No. 23243, 2007-Ohio-245, ¶ 11 n.2 (the appellant had an eleventh-grade education and had attained

a G.E.D.); *Hurst*, 157 Ohio App. 3d 133, 809 N.E.2d 689, ¶ 12 n.2 (the party was a high school graduate who was purchasing her first home); *but see Brunke v. Ohio State Home Servs., Inc.*, 9th Dist. Lorain No. 08CA009320, 2008-Ohio-5394, ¶ 12 (finding procedural unconscionability when the defendant failed to explain specific terms of the contract to plaintiffs who had never attended high school, struggled with their reading skills, and had poor comprehension skills).

Hank also argues he sought clarification of the material terms of the Release, but Great Lakes misled him. ECF Doc. 113, Page ID# 2102.  Although Hank testified that he did not understand several terms in the Release (ECF Doc. 113-1, Page ID# 2123-27), he only asked for clarification regarding the clause that stated Great Lakes would "place him on layoff status with no right to recall."  Id. at 2124.  It appears that Great Lakes did not explain and Hank did not ask about the meaning of any of the other terms in the Release.  *See* ECF Doc. 107-2, Page ID# 1972, 1974-78.  In *Cole*, *v. Temple Israel*, the court upheld the validity of a similar one-paragraph release that the plaintiff claimed he could not understand because of his limited, eleventh grade-G.E.D. education.  9th Dist. Summit No. 23243, 2007-Ohio-245, ¶¶ 11 n.2, 22. The court ruled: "Ohio law does not require that the terms of a written contract be read or explained to a fully literate individual before he signs it, even if he had relatively little formal education."  Id. at ¶ 12; *see also Anderson v. Delta Funding Corp.*, 316 F. Supp. 2d 554, 565 ("[T]he law does not require [however] that each aspect of a contract be explained orally to a party prior to signing." (internal citation and quotation marks omitted)).  "Furthermore, unless a fiduciary duty or other similar relationship exists between the parties to a contract, there is no duty for the parties to disclose facts material to the transaction to one another."  *Cole*, 9th Dist. Summit No. 23243, 2007-Ohio-245, ¶ 12.

In *Hurst v. Enter. Title Agency, Inc*., the court found that the exculpatory language in an escrow contract was not procedurally unconscionable, even though the plaintiff did not have a college education and was purchasing a home for the first time.  *See* 157 Ohio App. 3d 133, 2004-Ohio-2307, 809 N.E.2d 689, 695, ¶ 23 n.2 ("we do not hold that a clause in a real estate contract is procedurally unconscionable merely because one of the parties is a high school graduate who is purchasing her first home.  To do so would render any contract clause that is disadvantageous to an otherwise competent first-time home buyer from having any force.").  The court found that there was no indication the plaintiff was unable, because of time or capability, to read and comprehend the agreement.  Id. at 695, ¶ 23.  The court noted there was no evidence the plaintiff could not have changed the exculpatory clause.  Id.  Rather, the plaintiff failed to inquire or engage the escrow agent in any conversation or negotiation regarding the terms of the contract.  Id.  The plaintiff "simply read and signed the agreement, and thereby, ostensibly agreed to its terms."  Id.

Like the plaintiff in *Hurst*, Hank's "failure to adequately protect [his] own interests does not render the contract [] unconscionable."  *Hurst*, 157 Ohio App. 3d 133, 2004-Ohio-2307, 809 N.E.2d at 695, ¶ 23.  During the meeting with the Great Lakes executives on January 22, 2016 Hank did not request extra time to consider the Release or the Termination Notice, to speak with Mr. Siesel, or to consult an attorney.  ECF Doc. 107-2, Page ID# 1971; *c.f. Taylor Bldg. Corp. of Am*., 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12, ¶ 46 ("while the record does not indicate that the Benfields consulted an attorney before they signed the contract, the circumstances did not show that they were prevented from consulting with an attorney if they wished").  Rather, Hank "just [went] along with the way the situation was going to go."  *See* ECF Doc. 107-2, Page ID# 1071; *c.f. Cole*, 9th Dist. Summit No. 23243, 2007-Ohio-245, ¶ 12

16

(declining to find procedural unconscionability where an employee "merely state[d] that he signed the form because he was told to do so in order to receive his severance pay and that he was incapable of understanding the terms or the significance of the waiver form without an explanation from" his employer). Hank did not ask whether he could alter any of the terms in the Release and there is no evidence that Great Lakes explicitly stated it was unwilling to negotiate the Release's terms. *But see Porpora v. Gatliff Bldg. Co*., 160 Ohio App.3d 843, 2005-Ohio-2410, 828 N.E.2d 1081, ¶ 10 (9th Dist.) (finding procedural unconscionability where a company owner testified that he had never modified the arbitration clause at issue at a customer's request and would refuse to provide services to a customer that was unwilling to accept the language in the clause).

Hank has failed to show that the Release was procedurally unconscionable.

### 2. Substantive Unconscionability

Having found that the Release was not procedurally unconscionable, I must now address whether it was substantively unconscionable. Hank contends the Release was substantively unconscionable because "the terms are grossly one-sided," because he lacked business acumen, and because Great Lakes failed to advise Hank to seek counsel. ECF Doc. 113, Page ID# 2103. Great Lakes asserts the Release was not substantively unconscionable because "there was nothing outrageous or unreasonable about the Release," and because "Great Lakes provided valuable consideration." ECF Doc. 116, Page ID# 2224.

Determining substantive unconscionability requires the examination of the actual terms of the agreement. *Porpora*, 160 Ohio App.3d 843, 2005-Ohio-2410, 828 N.E.2d 1081, ¶ 8. "Contractual terms are substantively unconscionable if they are unfair and commercially unreasonable." *Brunke, Inc*., 9th Dist. Lorain No. 08CA009320, 2008-Ohio-5394, ¶ 10; *see also*

17

*Stachurski v. DirecTV, Inc.*, 642 F. Supp. 2d 758, 770 (N.D. Ohio 2009). "Factors courts have considered in evaluating whether a contract is substantively unconscionable include the fairness of the terms, the charge for the service rendered, the standard in the industry, and the ability to accurately predict the extent of future liability." *Hayes v. Oakridge Home*, 122 Ohio St. 3d 63, 2009-Ohio-2054, 908 N.E.2d 408, ¶ 33.

Hank has not shown that the terms of the Release are commercially unreasonable. It is not sufficient for Hank to merely claim "the terms are grossly one-sided" (ECF Doc. 113, Page ID# 2103), without providing further explanation demonstrating the Release's terms are substantively unconscionable. Here, Hank received valuable consideration in exchange for his promise not to pursue claims against Great Lakes, including Great Lakes placing him on lay-off status with no right of recall rather than terminating him for having allegedly falsified time records. *See* ECF Doc. 113-5, at Page ID# 2207. Where, as here, "a party has agreed to release a cause of action in exchange for consideration, all claims encompassed within the release are barred unless the release was obtained by fraud and the consideration received under the release is returned." *Cole*, 9th Dist. Summit No. 23243, 2007-Ohio-245, ¶ 10.

The terms of the Release were not one-sided; each side gave something up and each side received something. Hank's argument presupposes that what he gave up was much more valuable than what he received, but that is not evident from the face of the document. And were the court to credit Hank's argument, no employer would ever be able to enforce a release of potential employment-related claims given in exchange for an agreement to allow someone to seek unemployment compensation. Hank has cited no cases finding a release of the sort he signed to have been either commercially unreasonable or substantively unconscionable.

18

Consequently, the terms of the Release were neither substantively nor procedurally unconscionable.

### E.     Knowing and Voluntary Waiver

Hank argues he did not knowingly and voluntarily waive his right to bring suit against Great Lakes. ECF Doc. 113, Page ID#2103-07. Hank also asserts that the court should analyze his waiver of his discrimination claims under the standards embodied in the Age Discrimination in Employment Act, 29 U.S.C. § 626. Id. Great Lakes contends that the knowing and voluntary standard applies only to federal statutory claims, like those brought under Title VII of the Civil Rights Act of 1964, not the present claims Hank has brought under Ohio state law and the collective bargaining agreement. ECF Doc. 116, Page ID# 2219 (citing *Soltis v. J.C. Penny Corp.*, 635 F. App'x. 245 (6th Cir. 2015)). Great Lakes further asserts that even if the federal standards are applied, the court still would find that Hank knowingly and voluntarily signed the Release. Id. at 2221-22.

"A waiver is a voluntary relinquishment of a known right." *Chubb v. Ohio Bur. of Workers' Comp.*, 81 Ohio St. 3d 275, 278–79, 690 N.E.2d 1267, 1269 (1998). "It applies generally to all personal rights and privileges." Id. "Waiver assumes one has an opportunity to choose between either relinquishing or enforcing of the right." Id. at 279. To determine whether an employee has "knowingly and voluntarily" waived a right, courts consider: "(1) plaintiff's experience, background, and education; (2) the amount of time the plaintiff had to consider whether to sign the waiver, including whether the employee had an opportunity to consult with a lawyer; (3) the clarity of the waiver; (4) consideration for the waiver; as well as (5) the totality of the circumstances." *See Seawright v. Am. Gen. Fin. Servs., Inc.*, 507 F.3d 967, 974 (6th Cir. 2007) (quoting *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646 (6th Cir.2003)(en banc)).

19

In *Moore v. Ferrellgas, Inc.*, the court found a knowing and intelligent waiver when the person executing the document did not request extra time to consider the waiver or contact a lawyer and did not contemporaneously indicate that he did not understand the waiver.  *See* 533 F.Supp.2d 740, 749 (W.D.Mich.2008).  In *Banks v. Remington Coll.--BCL, Inc.*, the court found a knowing and voluntary waiver when the person did not ask the other party to explain the terms with which he was unfamiliar.  *See* No. 1:11-CV-1267, 2011 WL 4695921, at *3 (N.D. Ohio Oct. 6, 2011).  In *Sako v. Ohio Dep't of Admin. Servs.*, the court found a knowing and voluntary waiver when the person who executed the waiver had only completed the equivalent of a high school education, had no training in business or law, had limited time to review and consider the waiver before signing it, and did not consult an attorney, due to lack of time.  *See* No. 206-CV-0728, 2007 WL 1500905, at *7 (S.D. Ohio May 21, 2007), *aff'd*, 278 F. App'x 514 (6th Cir. 2008).

After examining the knowing and voluntary waiver factors, I conclude, based on the totality of the circumstances, that Hank knowingly and voluntarily waived his rights to file a grievance under the collective bargaining agreement or to pursue or file any sort of claim against Great Lakes.  The Release is a concise, four-sentence paragraph on a single page (ECF Doc. 113-5, Page ID# 2207), and, as discussed above, the terms of the Release are clear and unambiguous. *C.f. Sako*, No. 206-CV-0728, 2007 WL 1500905, at *7 (noting that the brevity of a settlement agreement, which was a little over a page long and was clear and concise in its language, indicated it could be easily read and understood).

Although Hank only completed the eleventh-grade before obtaining a G.E.D., Hank's own expert found that Hank had a post-high-school-level of proficiency in reading comprehension and word recognition.  *See* ECF Doc. 104-1, Page ID# 1926.  The Release does

20

not contain any formal "legal" or technical language that is difficult to understand or comprehend.  *See* ECF Doc. 104-1, Page ID# 1926.  Hank testified that he asked the Great Lakes representatives to explain the meaning of the clause in the Release regarding Great Lakes placing him on layoff status with no right to recall.  ECF Doc. 107-2, Page ID# 1975.  Hank did not ask about the Release waiver clause which stated that he agreed he would not file a grievance under the CBA or pursue or file any sort of claim against Great Lakes.  Id. at 1976.  Hank also stated he was "not really sure what the Collective Bargaining Agreement [wa]s," although he stated he had received copies of version of the Heavy Highway contract.  Id. at 1977-78.  Courts have found knowing and voluntary waiver when a party did not ask for an explanation of contract clauses he later claimed not to understand.  *See e.g. Shupe v. Asplundh Tree Expert Co.*, 566 F. App'x. 476, 483 (6th Cir. 2014) (affirming a finding of knowing and voluntary waiver when there was no evidence that the person indicated at the time she signed a waiver that she did not understand its terms, and never asked for more time to contemplate the waiver or to speak to an attorney); *see also Banks*, No. 1:11-CV-1267, 2011 WL 4695921, at *3.  Thus, waiver can be found here despite Hank's claims that he did not understand the waiver in the Release and that Great Lakes did not explain this provision.

Although Hank did not consult an attorney before he signed the Release, he does not argue that he was prevented from consulting with an attorney or told that he could not do so.  *C.f. Sako*, No. 206-CV-0728, 2007 WL 1500905, at *7.  Further, Hank was assisted throughout the meeting by a union representative who was present at the time the Release was signed.  *C.f. Sako v. Ohio Dep't of Admin. Servs.*, 278 F. App'x. 514, 518-19 (6th Cir. 2008).  There is no evidence that Hank requested more time to consider the situation, and he testified that no one coerced him or threatened him to induce the signing of the Release.  Instead, he acknowledged his conscious

21

decision to sign the release, "because I needed to make – I needed to collect unemployment," despite later testifying that he felt like he was being forced to sign it (to get the unemployment compensation benefits). See ECF Doc. 107-2, Page ID# 1982; *c.f. Sako*, 278 F. App'x at 519.

Hank made a calculated decision to sign the Release, trading his right to pursue a grievance or other claims in exchange for a clear path to unemployment compensation benefits. When a person follows this sort of mental process, he cannot show that his perceived compulsion rendered his waiver invalid as a matter of law. In sum, I find Hank was sufficiently aware of the waiver's legal consequences, and Hank knowingly and voluntarily executed the Release.

Hank also argues that the court should analyze the waiver under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 626, because "Ohio law does not possess a statutory scheme for analyzing employment law waivers." ECF Doc. 113, Page ID# 2107. In *Gascho v Scheurer Hosp.*, 400 F. App'x. 972 (6th Cir. 2010), a case that involved waiver of Title VII of the Civil Rights Act of 1964 ("Title VII") claims, the Sixth Circuit examined the requirements in 29 U.S.C. § 626(f)(1) in its analysis regarding the amount of time a party should be given to consider a waiver in a contract. *See* 400 F. App'x. at 982. Hank's complaint does not allege any claims under the ADEA or Title VII, (ECF Doc. 1, Attachment 1) and he provides no authority that requires or suggests that courts interpreting Ohio law must analyze waivers or other employment contract clauses under 29 U.S.C. § 626(f) and the ADEA.[1] Thus, I decline to do so here.

---

[1] Neither the case Hank cites in his brief, *Genaro v. Cent. Transport. Inc.*, 84 Ohio St. 3d 293, 703 N.E. 2d 782 (1999) (*see* ECF Doc. 113, Page ID# 2107 n.1), nor any other cases I have found require a court applying Ohio state law to analyze a waiver in an employment contract under the provisions of 29 U.S.C. § 626 or the ADEA.

### F.    Public Policy

Hank also asserts that the waiver in the Release is void as against public policy.  ECF Doc. 113, Page ID# 2108.  To support his argument, Hank cites case law and an Equal Employment Opportunity Commission notice discussing worker's non-waivable rights to bring charges under several federal statutes, including Title VII and ADEA, or to assert claims before various federal agencies.  Id.; *see also E.E.O.C. v. Cosmair, Inc., L'Oreal Hair Care Div.,* 821 F.2d 1085, 1090 (5th Cir. 1987); *U-Haul Co*., 347 N.L.R.B. 375, 388-89 (2006) (mandatory arbitration provision requiring workers to waive the right to file NLRB changes violated provisions of the National Labor Relations Act);  EEOC Notice No. 915.002 (2000).

Great Lakes contends that Hank's arguments are irrelevant because Great Lakes is not asserting that the Release precludes Hank from filing a charge with the EEOC or the NLRB and Great Lakes never attempted to prohibit Hank from filing an EEOC or NLRB charge.  ECF Doc. 116, Page ID# 2225.  Great Lakes further asserts that Hank has filed charges with both the EEOC and the NLRB.  Id.

This lawsuit does not involve claims under the Equal Employment Opportunity Act or the National Labor Relations Act.  Hank's complaint only asserts claims under Ohio Revised Code §§ 4112.02, 4112.14, and 4123.90 and the collective bargaining agreement between the Union and Great Lakes, implicating § 301 of the Labor Management Relations Act, 29 U.S.C. § 185.  *See* ECF Doc. 1, Attachment 1.  Great Lakes is only asserting that the Release precludes [Hank] from filing *this lawsuit* against Great Lakes."  Id. (emphasis in original).  Here there is no evidence that Great Lakes attempted to prohibit Hank from filing an EEOC or NLRB charge in the Release or otherwise.  *C.f. Broussard v. First Tower Loan, LLC,* 150 F. Supp. 3d 709, 725 (E.D. La. 2015), *as modified on denial of reconsideration*, No. CV 15-1161, (E.D. La. Mar. 8,

23

2016) (declining to find that an arbitration provision was unenforceable for purporting to foreclose the filing of an EEOC charge because there was no evidence the employer attempted to prohibit the plaintiff from filing an EEOC charge in the agreements at issue and the EEOC processed a charge filed on the plaintiff's behalf).  Consequently, I recommend the court reject Hank's federal law-public policy arguments.

Hank further argues that the waiver is void because it would violate Ohio Revised Code § 4141.32.  ECF Doc. 113, Page ID# 2108.  Great Lakes does not address this argument.

Section 4141.32 of the Ohio Revised Code states in relevant part that "[e]xcept as permitted by Chapter 4141 of the Revised Code, no agreement by an employee to waive his rights to benefits is valid . . . ."  "Benefits" are "money payments payable to an individual who has established benefit rights, as provided in this chapter, for loss of remuneration due to the individual's unemployment."  Ohio Rev. Code Ann § 4141.01(c).  "An employee meets the definition of total unemployment for a given week if []he performs no services and is due no payment."  *Lorain Cty. Aud. v. Ohio Unemp. Comp. Rev. Comm.,* 113 Ohio St. 3d. 127, 2007-Ohio-1247, 863 N.E.2d 133, ¶ 14 (citing Ohio Rev. Code Ann. § 4141.01(M)).  An employee may be found ineligible for benefits if the employer discharged the employee for just cause in connection with the employee's work.  Ohio Rev. Code Ann. § 4141.29(D)(2)(a).  Further, if an employee has a termination package pursuant to a collective-bargaining agreement between his union and the employer, the employee is deemed to have accepted the benefits of the package, and waived his right to benefits, in return for his agreement to be terminated at a certain time.  *Lorain Cty. Aud.*, 113 Ohio St. 3d 124, 2007-Ohio-1247, 863 N.E.2d 133, ¶ 16 (citing *Ivy v. Dudley*, 6 Ohio St.2d 261, 217 N.E.2d 875 (1966)).

24

Here there is no evidence that Great Lakes attempted to prohibit Hank from obtaining unemployment compensation in the Release or otherwise.  Moreover, Hank is not seeking unemployment compensation as a remedy in the present lawsuit.  Thus, I recommend the court reject Hank's arguments with respect to Ohio Rev. Code § 4141.32 and find that the Release is not void as against public policy.

### G.    Mr. Siesel's authority to sign the Release on behalf of the Union

Hank argues that the waiver in the Release is invalid because Mr. Siesel, the Local 18 representative who attended the meeting when Hank signed the Release, lacked the authority to sign the Release on the Union's behalf.  ECF Doc. 113, Page ID# 2110.  Great Lakes argues that it is irrelevant whether Mr. Siesel had the authority to bind the union, because the Release at issue is the agreement between Great Lakes and Hank.  ECF Doc. 116, Page ID# 2226.

Hank has not articulated how Mr. Siesel's lack of authority to sign the Release would make the Release invalid with respect to the agreement between Hank and Great Lakes.  Nor has Hank provided any case law in which a court held that an agreement signed by an employer, an employee, and a union representative was invalid with respect to the provisions concerning the employer and employee because the union representative lacked the authority to sign the contract.  As Great Lakes correctly states, "the issue before the [c]ourt is not whether the Release was valid to bind the Union from pursuing claims against Great Lakes; the issue is whether the Release was valid to bind Plaintiff from pursuing this lawsuit against Great Lakes."  ECF Doc. 116, Page ID 2226 (emphasis in original).  I recommend the court reject Hank's argument and find Hank's waiver in the Release valid with respect to Great Lakes, despite Mr. Siesel's alleged lack of authority to sign the Release on the Union's behalf.

**IV.    Recommendations**

I recommend that The Great Lakes Construction Company's limited motion for summary judgment (EFC Doc. 107) be **GRANTED** on all claims.  The granting of summary judgment to Great Lakes on all claims would render moot Great Lakes' Motion to Exclude the Report and Testimony of Dr. Richard P. Oestreich (ECF Doc. 109), plaintiff's Motion for Leave to File Brief in Opposition to Defendant Great Lakes' Motion to Exclude Expert Report and Testimony of Dr. Richard Oestreich (ECF Doc. 120), plaintiff's Motion in Limine to Exclude Any and All Documents and/or Testimony of Great Lakes Construction Co.'s Rebuttal Vocational Expert, Denise L. O'Conner, M.A., C.R.C., Including Rebuttal Expert Report Dated December 15, 2017 (ECF Doc. 125), as well as Great Lakes' Motion for Summary Judgment.  (ECF Doc. 130).  I further recommend, therefore, that (1) the motion to exclude the report and testimony of Dr. Richard P. Oestreich (ECF Doc. 109), (2) the motion for leave to file brief in opposition to defendant Great Lakes' motion to exclude expert report and testimony of Dr. Richard Oestreich (ECF Doc. 120), (3) the motion in limine to exclude any and all documents and/or testimony of rebuttal vocational expert, Denise L. O'Conner, M.A., C.R.C., including rebuttal expert report dated December 15, 2017 (ECF Doc. 125), and (4) Great Lakes' motion for summary judgment (ECF Doc. 130) be **DENIED** as moot.

Dated: February 16, 2018

Thomas M. Parker
United States Magistrate Judge

---

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981).  See also *Thomas v. Arn,* 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986).